IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL JOHNSON, :
:
    Petitioner :
: CIVIL NO. 3:CV-12-0754
v. :
: (Judge Caputo)
PENNSYLVANIA BOARD OF :
PROBATION AND PAROLE, *et al.*, :
:
    Respondents :

MEMORANDUM

I.   Introduction

Russell Johnson, a state inmate formerly housed at SCI-Camp Hill, filed this *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.[1] The Respondent, the Pennsylvania Board of Probation and Parole (the Board), after several technical parole violations, revoked Mr. Johnson's parole, returned him to prison to serve his new sentences and backtime on his prior sentences. Mr. Johnson does not challenge the revocation of his parole, but rather the Board's authority to recalculate his parole maximum sentence date and the calculation of that date. The Board argues that the Petition should be dismissed because Mr. Johnson's petition is untimely, he has failed to exhaust state-court remedies, and

---

[1] On May 11, 2012, Mr. Johnson advised the Court of his new address at the Joseph E. Coleman Center in Philadelphia, Pennsylvania.

because it has no merit in any event. For the reasons discussed below, the Court will deny Mr. Johnson's Petition because he has procedurally defaulted on his claims.

II.    **Background**

Mr. Johnson has had a series of convictions for which he was incarcerated, paroled, and then violated his parole. For the purpose of setting forth Mr. Johnson's sentencing and parole history, this background, which is undisputed, relies substantially on the Board's statement of facts in its response to the Petition and supporting exhibits. *See* Doc. 11.

Mr. Johnson was committed to the Pennsylvania Department of Corrections (DOC) after being convicted in the Philadelphia County Court of Common Pleas where he received an aggregated sentence of 12 to 25 years for two counts of Robbery. Mr. Johnson was assigned inmate number AM-2863 in association with his service of this sentence. (Doc. 11-1, ¶ 6.) The original minimum and maximum dates for this sentence were June 26, 1991 and June 26, 2004. (*Id.*, ¶ 7.) On June 17, 1993, the Board paroled Mr. Johnson from this sentence. (*Id.*, ¶ 8.)

On March 17, 1994, Mr. Johnson was arrested on new criminal charges filed in the Montgomery County Court of Common Pleas. (*Id.*, ¶ 9.) The next day the Board lodged a detainer was against Mr. Johnson for parole violations. (*Id.*, ¶ 10.) At his May 6, 1994, parole violation hearing, Mr. Johnson admitted to violating the conditions of his parole by leaving the district to which he was paroled without

permission. (*Id.*, ¶ 11.) Based on his admission, the Board recommitted Mr. Johnson as a technical parole violator (TPV) of his conditions of parole. (*Id.*, ¶ 12.)

On December 7, 1994, a Montgomery County Court of Common Pleas jury found Mr. Johnson guilty of Robbery (2 counts), Criminal Conspiracy, Simple Assault, Theft of Moveable Property, Theft of Receiving Stolen Property, and Possession of an Instrument of Crime. (*Id.*, ¶ 13.) Mr. Johnson was sentenced on February 23, 1995, to a term of 6 ½ to 13 years for the new conviction. (*Id.*, ¶ 14.)

Mr. Johnson was returned to the custody of the Pennsylvania Department of Corrections (DOC) on February 28, 1995, and assigned inmate number DZ-2860 for his new Montgomery County Court of County Pleas conviction. (*Id.*, ¶¶ 15-16.) On April 5, 1995, the Board held a new revocation hearing based on Mr. Johnson's new convictions, subsequently recommitting Mr. Johnson as a convicted parole violator (CPV). (*Id.*, ¶ 17.) By decision mailed July 17, 1995, the Board recalculated Mr. Johnson's maximum sentence date from June 26, 2004 to March 4, 2006, based on his recommitment as a CPV. (*Id.*, ¶ 19.)

On June 30, 1999, the Board reparoled Mr. Johnson from his original sentence (at inmate number AM-2863), to his state detainer sentence, his new Montgomery County Court of Common Pleas sentence of 6 ½ to 13 years (at inmate number DZ-2860). (*Id.*, ¶ 20.) On June 7, 2004, the DOC released Mr. Johnson on pre-release status from his Montgomery County sentence at inmate number DZ-2860. (*Id.*, ¶ 21.) Mr. Johnson remained on constructive parole from his original sentence, at inmate number AM-2863, at the time of his release on June 7, 2004.

(*Id.*, ¶ 22.)

On February 3, 2005, Mr. Johnson was arrested again on new criminal charges filed in the Montgomery County Court of Common Pleas. (*Id.*, ¶ 23.) Mr. Johnson posted bail on his new charges the next day. (*Id.*, ¶ 24.) On February 17, 2005, authorities returned Mr. Johnson to the DOC to serve his state detainer sentence associated with inmate number DZ-2860. (*Id.*, ¶ 25.) On November 28, 2005, Mr. Johnson pled guilty to Criminal Conspiracy — Access Device Fraud in the Montgomery County Court of Common Pleas and received a new sentence of 6 to 12 months in county prison. (*Id.*, ¶ 26.)

The Board lodged a detainer against Mr. Johnson on January 5, 2006, based on his conviction. (*Id.*, ¶ 27.) A parole revocation hearing was held on February 27, 2006, based on Mr. Johnson's new criminal charge, his second Montgomery County Court of Common Pleas charge. (Doc. 11-2, ECF p. 22.) At the hearing, Mr. Johnson was advised that he would lose "all of [his] street time. That is all the time on constructive parole" on his AM-2863 sentence. (*Id.*, ECF p. 40.)

On May 30, 2006, the Board mailed Mr. Johnson its decision recommitting him as a CPV "when available". (Doc. 11, ¶ 29; Doc. 11-2, ECF p. 58.) The Board's May 30, 2006 revocation decision did not recalculate the maximum date for Mr. Johnson's original sentence, associated with inmate number AM-2863, because he was required to first serve his new count prison and his state detainer sentence at inmate number DZ-2860 before he could commence service on his original state sentence. (Doc. 11, ¶ 30.)

-4-

The Montgomery County Court of Common Pleas paroled Mr. Johnson from his new county prison sentence on June 1, 2006. (*Id.*, ¶ 31.) On October 19, 2007, the Board paroled Mr. Johnson on his detainer sentence, his 6 ½ to 13 year sentence, at inmate number DZ-2860. (*Id.*, ¶ 32; Doc. 11-2, ECF p. 60.)

On November 1, 2007, the Board mailed Mr. Johnson its decision recalculating his parole violation maximum date on his original sentence (at inmate number AM-2863). His maximum date for this sentence was revised from March 4, 2006 to June 23, 2014 based on his recommitment as a CPV. (Doc. 11, ¶ 33; Doc. 11-2, ECF pp. 61-62.) The June 23, 2014, parole violation maximum date calculation reflects that Mr. Johnson's forfeiture of credit for the period of time he was at liberty on parole from his initial sentence at inmate number AM-2863 from June 30, 1999[2] to February 3, 2005.[3] (Doc. 11, ¶ 34.) Mr. Johnson did not receive any credit on his AM-2863 sentence during the time he was incarcerated from February 3, 2005 to January 5, 2006, because he was not confined pursuant to a Board detainer during that period. (*Id.*, ¶ 35.) Likewise, Mr. Johnson did not receive credit on his AM-2863 sentence for the period of January 5, 2006 to October 19, 2007, because that time was applied to his new county sentence[4] and his state detainer sentence at inmate number DZ-2860. (*Id.*, ¶¶ 36-38.) The June 23, 2014

---

[2] This is the date Mr. Johnson was reparoled from his initial sentence (AM-2863) to his 6 ½ to 13 year state detainer sentence (DZ-2860). *See* Doc. 11-2, ¶ 20.

[3] Mr. Johnson was arrested on February 3, 2005, in Montgomery County and ultimately received a new 6 to 12 month prison county sentence. (*Id.*, ¶¶ 23-26.)

[4] With respect to Mr. Johnson's Montgomery County sentence, he received credit toward this sentence from November 28, 2005 forward. (*Id.*, ¶ 37.)

-5-

maximum date calculation reflects that Mr. Johnson became available to commence service on his original sentence, AM-2863, on October 19, 2007 when he was paroled from his DZ-2860 sentence (the sentence he received as a result of new criminal charges incurred while on parole of his original AM-2863 sentence). (*Id.*, ¶ 39.)

The Board mailed Mr. Johnson notice of his new June 23, 2014, maximum date on November 1, 2007. (*Id.*, ¶40; Doc. 11-2, ECF p. 61.) Language in that notice advised Mr. Johnson of his appeal rights:

> IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.

(Doc. 11-1, ¶ 40; Doc. 11-2, ECF p. 61.) Mr. Johnson filed a request for administrative relief with the Board on November 15, 2007. (Doc. 11-1, ¶ 41; Doc. 11-2, ECF p. 64.) The Board denied Mr. Johnson relief by a response mailed February 7, 2008. (Doc. 11-1, ¶ 42; Doc. 11-2, ECF p. 65.) The Board advised Mr. Johnson that:

> When you were paroled on June 30, 1999, your maximum date was March 4, 2006, which left 2,439 days (of 6 years, 8 months, 4 days) remaining on your original sentence. As a convicted parole violator, you automatically forfeit credit for all of the time you spent on parole. *See* 61 P.S. § 331.21a(a). You became available to begin serving your back time on October 19, 2007, when you were paroled from the sentence you were serving under Department of Correction's number

> DZ-2860. Adding 2,439 days (or 6 years, 8 months, 4 days) to October 19, 2007, yield's a new parole violation maximum date of June 23, 2014.

(Doc. 11-2, ECF p. 65.) Mr. Johnson did not file an appeal challenging the Board's November 1, 2007 decision and/or the February 7, 2008 decision to the Commonwealth Court of Pennsylvania's appellate jurisdiction. (Doc. 11-1, ¶ 43.)

On February 18, 2010, Mr. Johnson was reparoled from his original AM-2863 sentence only to be arrested as a TPV on May 18, 2010. (*Id.*, ¶¶ 44-45; Doc. 11-2, ECF p. 66.) Following a violation hearing, Mr. Johnson was recommitted as a TPC on his AM-2863 sentence. (Doc. 11-1, ¶ 46; Doc. 11-2, ECF p. 67.) Mr. Johnson's recommitment as a TPV did not change his June 23, 2014 maximum sentence date. (Doc. 11-1, ¶ 47; Doc. 11-2, ECF p. 89.) Since his last parole revocation, the Board has reviewed and denied Mr. Johnson parole at least twice. (Doc. 11-1, ¶ 48.) Mr. Johnson's maximum date for his original sentence at inmate number AM-2863 remains June 23, 2014. (*Id.*, ¶ 49.)

On April 23, 2012, Mr. Johnson filed this petition for writ of habeas corpus. (Doc. 1, Pet.) He challenges the Board's recalculation of his maximum sentence date of June 23, 2014. Specifically, he claims the Board's recalculation of his parole violation maximum date, without any judicial order modifying his original sentence, is a violation of the due process clause and the separation of powers doctrine. Respondent argues that Mr. Johnson's Petition should be dismissed because he has failed to exhaust his state court remedies. (Doc. 11, Response to Pet. for Writ of Habeas Corpus.)

## III.  Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. *Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002).

## IV.  Discussion

### A.  Mr. Johnson's Claim is Procedurally Defaulted without Excuse.

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.[5] *See Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 2554–2555, 115 L.Ed.2d 640 (1991); *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004). A petitioner shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. *See* 28 U.S.C. § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838,

---

[5] 28 U.S.C. § 2254(b)(1) provides the following:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

844–45, 119 S.Ct. 1728, 1732–1733, 144 L.Ed.2d 1 (1999); *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The petitioner bears the burden of establishing that all available state remedies have been exhausted. *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005). This exhaustion requirement is applicable to alleged unconstitutional acts of the parole board. *See DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005).

In the case of a Pennsylvania parole violator, such as Mr. Johnson, the petitioner must first challenge the Board's decision by filing a petition for administrative review with the Board within thirty days of the mailing date of the Board's determination. *See* 37 Pa. Code § 73.1(b)(1); *Kester v. Pennsylvania Bd. of Prob. and Parole*, 609 A.2d 622, 626 (Pa. Commw. 1992) (citing *Bronson v. Pennsylvania Bd. of Prob. and Parole*, 491 Pa. 549, 555–57, 421 A.2d 1021, 1024–25 (1980)). The administrative appeal must be followed by an appeal to the Pennsylvania Commonwealth Court. *See* 42 PA. CONS. STAT. § 763(a)(jurisdiction of Commonwealth Court over appeals from final orders of government agencies); *Borsello v. Colleran*, 833 A.2d 1213, 1215 (Pa. Commw. 2003) ("Appeals of the Board's parole revocation and recommitment orders are within the exclusive appellate jurisdiction of the Commonwealth Court."). The third and final step Petitioner must file is a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. *See* 42 PA. CONS. STAT. § 724; *Williams v. Wynder*, 232 F. App'x 177, 178 (3d Cir. 2007); . If the petitioner fails to seek review from the Pennsylvania Supreme Court, then petitioner has not fully complied with the State's exhaustion requirements for the purpose of 28 U.S.C. § 2254. *Id.*, 232 F. App'x at 181.

Here, the Court agrees with Respondents that Mr. Johnson never challenged the Board's calculation of his parole violation maximum date in state court. Mr. Johnson did not file an appeal challenging the Board's November 1, 2007 decision and/or the February 7, 2008 decision to the Commonwealth Court of Pennsylvania's appellate jurisdiction. (Doc. 11-1, ¶ 43.) Furthermore, his opportunity to do so long past prior to the filing of his habeas petition. Accordingly, the Court finds that Mr. Johnson failed to fully exhaust all of his available state remedies and because any such state challenge would be procedurally barred, his claims are procedurally defaulted for purposes of federal habeas. *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991); *Collins v. Secretary of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014)("A claim is procedurally defaulted if the petitioner failed to exhaust that claim in state court and if state procedures prohibit the petitioner from later presenting the claim in state court.").

A federal court cannot consider claims in a section 2254 petition that have been procedurally defaulted unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *Jones v. Pennsylvania Bd. of Probation and Parole*, 492 F. App'x 242, 244 (3d Cir. 2012). To demonstrate "cause" for a procedural default, petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

"Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See *Lockhart v. Fretwell,* 506 U.S. 364, 842-43, 113 S.Ct. 838, 369-70, 122 L.Ed.2d 180 (1993). Finally, a federal court may excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

In his Traverse (Doc. 12), Mr. Johnson relies on the Pennsylvania Commonwealth Court's holding in *Weaver v. Pennsylvania Bd. of Prob. and Parole,* 688 A.2d 766 (Pa. Commw. 1997) to suggest that "a state prisoner seeking original parole release cannot challenge a refusal of parole by the Board via an appeal to the state courts." (*Id.,* ECF p. 3.) Mr. Johnson's reliance on this case to suggest that he need not exhaust his state court remedies prior to filing a habeas petition challenging the Board's calculation of his maximum release date following a parole violation is misplaced. Here, Mr. Johnson is not challenging his original release on parole, as he has no liberty interest in the right to be paroled, rather he is challenging the Board's authority and recalculation of his maximum sentence date based on his revocation of parole. Moreover, the Board notified Mr. Johnson of

appeal rights in its November 1, 2007 decision establishing his new parole violation maximum date. The Board advised Mr. Johnson of his right to request administrative relief first from the Board itself, and then from the Commonwealth Court of Pennsylvania. See Doc. 11-2, ECF p. 61. Based on the above, it is clear that the claims Mr. Johnson seeks to pursue in the instant habeas petition are procedurally defaulted without excuse as he was aware of, but did not perfect, his appeal of the Board's decision through the state courts. Likewise, there is no indication in his Petition or Traverse that a failure to review his claim will result in a fundamental miscarriage of justice. As such, the Court agrees with Respondents that the pending habeas petition is subject to dismissal based on procedural default.

## V.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability (COA), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was right in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will issue.

An appropriate Order follows.

/s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Date: JUNE  25  , 2014